Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| UNIÓN INDEPENDIENTE DE EMPLEADOS DE LA AUTORIDAD DE EDIFICIOS PÚBLICOS (UIE-AEP)<br><br>Recurrida<br><br>v.<br><br>AUTORIDAD DE EDIFICIOS PÚBLICOS (AEP)<br><br>Peticionaria | KLCE202400907 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2021CV08515<br><br>Sobre: Solicitud de cumplimiento de laudo de arbitraje |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# **R E S O L U C I Ó N**

En San Juan, Puerto Rico, a 23 de septiembre de 2024.

Comparece la parte peticionaria, Autoridad de Edificios Públicos, mediante el recurso de epígrafe y nos solicita que revoquemos la *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 18 de julio de 2024. Mediante el referido dictamen, el foro primario declaró No Ha Lugar la *Moción de Sentencia Sumaria*, promovida por la parte peticionaria.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto solicitado.

## **I**

El 28 de diciembre de 2021, la Unión Independiente de Empleados de la Autoridad de Edificios Públicos (Unión o recurrida) incoó una *Demanda* en contra de la Autoridad de Edificios Públicos (Autoridad o peticionaria).[1] En síntesis, solicitó al Tribunal de Primera Instancia que ordenara a la Autoridad el cumplimiento del

---
[1] Apéndice del recurso, págs. 76-81.

Número Identificador

RES2024 _____

*Laudo* emitido el 6 de febrero de 2019 en el Caso Núm. A-07-2767, sobre el despido del unionado José J. Rodríguez Fuentes (Rodríguez Fuentes). Especificó que, en el referido dictamen, un árbitro resolvió que la Autoridad había abusado de su discreción al despedir a Rodríguez Fuentes, por lo que le ordenó a la Autoridad a pagar los salarios y demás haberes dejados de percibir por razón del despido injustificado, así como el pago del interés legal vigente y los honorarios de abogado. Arguyó que, aun cuando la Autoridad no presentó un recurso de revisión y el *Laudo* advino final y firme el 8 de marzo de 2019, esta no había cumplido con lo ordenado. Sostuvo que, ante la inacción de la Autoridad para cumplir con lo ordenado en el *Laudo*, procedía la intervención del foro primario para que ordenara el cumplimiento del dictamen arbitral.

Por su parte, el 19 de mayo de 2022, la Autoridad presentó su alegación responsiva.[2] En esencia, negó las alegaciones en su contra y admitió que, en el Caso Núm. A-07-2767, se emitió un *Laudo* que ordenaba la reinstalación de Rodríguez Fuentes. Sin embargo, alegó que Rodríguez Fuentes tenía que realizar acciones afirmativas para su reinstalación, las cuales no había hecho. Sobre ese particular, añadió que no había podido cumplir con el dictamen arbitral, toda vez que Rodríguez Fuentes no había cooperado con el proceso de su reinstalación.

Posteriormente, el 30 de octubre de 2023, la Autoridad instó una *Moción de Sentencia Sumaria*.[3] En síntesis, alegó que realizó los pagos correspondientes y completó la compensación ordenada por el *Laudo*. Indicó que, el 1 de mayo de 2011, la Administración del Seguro Social determinó que, efectivo al 1 de mayo de 2011,

---

[2] Apéndice del recurso, págs. 160-162.

[3] Íd., págs. 15-26. Junto a su moción, la Autoridad presentó los siguientes documentos: (1) copia del *Laudo* emitido el 6 de febrero de 2019 en el Caso Núm. A-07-2767; (2) copia del *Notice of Award of the Retirement, Survivors and Disability Insurance*, a nombre de José J. Rodríguez Fuentes, con fecha del 7 de junio de 2013; (3) copia de varios documentos sobre evidencia de pagos, a nombre de José J. Rodríguez Fuentes. Véase, Apéndice del recurso, págs. 27-74.

Rodríguez Fuentes estaba incapacitado para trabajar. Señaló que, el 26 de octubre de 2022, emitió un primer pago por $111,264.27, así como un segundo pago de $32,454.66, correspondientes a salarios, pasos y aumentos salariales de Rodríguez Fuentes. Planteó que, con dichos desembolsos, pagó por los haberes dejados de devengar por Rodríguez Fuentes, desde el 16 de diciembre de 2006, fecha del despido, hasta el 1 de mayo de 2011, fecha de efectividad de la determinación de incapacidad emitida por la Administración del Seguro Social. No obstante, adujo que la Unión solicitó que se aplicara retroactivamente la doctrina recientemente emitida por el Tribunal Supremo de Puerto Rico en *Silva Soto v. Suiza Dairy Corp.*, 211 DPR 203 (2023); específicamente, que no se descontara del pago realizado a Rodríguez Fuentes los beneficios del Seguro Social por discapacidad, alegando que el mismo fue producto del despido.

Sobre ese particular, la Autoridad sostuvo que la solicitud de la Unión no procedía en la medida en que el *Laudo* constituía la ley entre las partes y este no contempló la doctrina de fuente colateral para aplicarla a los beneficios del Seguro Social por incapacidad. En cuanto a la aplicabilidad de la precitada jurisprudencia, detalló que, el 17 de febrero de 2023, nuestro más Alto Foro publicó la *Opinión*, emitida el 13 del mismo mes y año, en *Silva Soto v. Suiza Dairy Corp.*, supra, págs. 212-214, mediante la cual expresó que:

> En esta ocasión nos corresponde determinar si el pago de beneficios por discapacidad, recibidos del programa de Seguro por Incapacidad del Seguro Social, debe ser deducido de la paga atrasada por despido injustificado. Esto requiere que evaluemos el origen y propósito del beneficio colateral en cuestión.
>
> El propósito del SSDI es proveer fondos —a través de contribuciones de los empleados y los patronos— a personas de la tercera edad, personas no videntes y personas con discapacidad. Por consiguiente, podemos concluir que los beneficios del SSDI no se derivan por completo de Suiza Dairy, sino que surgen de fondos del Estado derivados de contribuciones. Por tanto, los pagos del beneficio del SSDI provienen, esencialmente, de una fuente independiente.

Por otro lado, los pagos que el señor Silva Soto recibió del SSDI no se hicieron para liberar de responsabilidad a Suiza Dairy, sino para llevar a cabo una política de mejoramiento social en beneficio de todo el Estado. Por ende, los beneficios del SSDI son de naturaleza distinta a la paga atrasada por despido injustificado.

Como vemos, no estamos ante un problema de doble compensación porque los beneficios del seguro social por discapacidad no buscan liberar a Suiza Dairy del pago de salarios, parte de sus obligaciones como patrono. Recordemos que la SSA hizo la determinación de incapacidad del señor Silva Soto, tras diagnosticar que este tenía una depresión severa a partir de la fecha del despido. En ese sentido, no existe razón alguna por la que debamos beneficiar al causante del daño (Suiza Dairy).

Aunque reconocemos que en el pasado expresamos que los beneficios de seguro social por jubilación se deben considerar para determinar la cuantía concedida en concepto de salarios no devengados, no ignoramos que tradicionalmente se ha aplicado la doctrina de fuente colateral a otros beneficios recibidos al amparo de legislación social, tal como el seguro social.

Independientemente de esto, en este caso queda claro que los beneficios de seguro social que recibió el señor Silva, por causa de la depresión sufrida tras su despido, no deben descontarse de la partida en concepto de paga atrasada, particularmente porque estos provienen de una fuente colateral independiente a Suiza Dairy. Además, según la naturaleza del daño que se sufrió y la razón de ser del beneficio que se recibió, aquí es improcedente la acumulación de compensaciones. Es decir, no cabe considerar estos beneficios para reducir la partida del pago de los salarios y beneficios dejados de devengar ya que se trata de emolumentos independientes. Por consiguiente, con la deferencia que merecen las determinaciones de hechos del foro primario, concluimos que no procede descontar los beneficios del SSDI de la paga atrasada. Suiza Dairy no puede beneficiarse de lo que el empleado agraviado recibió de una fuente colateral producto de una política de mejoramiento social como lo es el SSDI. (Citas omitidas). (Énfasis omitido).

La Autoridad arguyó que la doctrina esbozada en *Silva Soto v. Suiza Dairy Corp.*, supra, no debía tener un efecto retroactivo, sino prospectivo, toda vez que el caso se resolvió en el año 2023, mientras que el *Laudo* objeto de la acción de epígrafe advino final y firme en el año 2019. Destacó que, los pagos realizados fueron "NO FICA", lo cual implicaba que, al momento de cumplir con el *Laudo*, a Rodríguez Fuentes no se le descontaron las partidas de Seguro

Social, pues el análisis empleado sobre las cantidades pagadas se fundamentó en el estado de derecho vigente al momento de emitido el dictamen arbitral. Reiteró que, con el pago de las mencionadas cantidades, se cubrieron los haberes dejados de devengar por Rodríguez Fuentes, desde la fecha de su despido el 6 de diciembre de 2006, hasta la fecha en que fue efectiva la determinación de incapacidad el 11 de marzo de 2011, dando por cumplido el *Laudo*, sin controversias adicionales pendientes en el caso. No obstante, en la alternativa, propuso que, de aplicar la referida doctrina, la Unión tenía el peso de la prueba para establecer que la declaración de la incapacidad de Rodríguez Fuentes fue como resultado del despido y que el beneficio por incapacidad fue concedido a causa de ello.

El 13 de noviembre de 2023, la Unión se opuso.[4] Sostuvo que, estando el caso de epígrafe pendiente ante el tribunal de instancia en cuanto al cobro de lo ordenado en el *Laudo*, era aplicable lo resuelto por nuestro Tribunal Supremo en *Silva Soto v. Suiza Dairy Corp.*, supra. Argumentó que los beneficios de Seguro Social que recibió Rodríguez Fuentes a causa de la depresión sufrida tras su despido no debían descontarse de la partida en concepto de paga atrasada, particularmente porque estos provenían de una fuente colateral independiente de la Autoridad. Adujo que, según la naturaleza del daño que sufrió Rodríguez Fuentes y la razón de ser del beneficio que este recibió, era improcedente la acumulación de compensaciones, pues no cabía considerar dichos beneficios para reducir la partida del pago de los salarios y beneficios dejados de devengar, ya que se trataba de emolumentos independientes. Por tal razón, arguyó que no procedía descontar los beneficios del Seguro Social de la paga atrasada, toda vez que la Autoridad no podía beneficiarse de lo que una persona empleada agraviada recibió de

---

[4] Apéndice del recurso, págs. 137-159.

una fuente colateral producto de una política de mejoramiento social, como lo es el Seguro Social.

De otro lado, la Unión relató que, el 17 de febrero de 2023, las partes se encontraban en una Conferencia con Antelación al Juicio discutiendo las partidas pendientes para finiquitar el caso por vía transaccional y atendiendo el estado de derecho vigente a la fecha en que se discutía el pago de lo adeudado por la Autoridad, en virtud del *Laudo* emitido a favor de Rodríguez Fuentes. Particularizó que, en esa vista, había informado que las partes tenían unos acuerdos preliminares, basados en la doctrina de que cuando un árbitro ordenaba el pago de los salarios y demás haberes dejados de percibir, por razón del despido injustificado de una persona trabajadora despedida injustificadamente, se debían descontar del pago a efectuarse los beneficios recibidos del Seguro Social, evitando así que la persona trabajadora recibiera una doble compensación por el mismo concepto. No obstante, señaló que, ese mismo día, el Tribunal Supremo de Puerto Rico publicó la *Opinión* emitida el 13 de febrero de 2023 en *Silva Soto v. Suiza Dairy Corp.*, supra, la cual cambió el paradigma de los casos relacionados a los descuentos de los beneficios recibidos del Seguro Social, ya que, a partir de esta, un patrono que despedía injustificadamente a una persona trabajadora no podía beneficiarse de lo que la agraviada recibió de una fuente colateral producto de una política de mejoramiento social. Sostuvo que dicho precedente era de aplicación al pleito de epígrafe y que la Autoridad no podía beneficiarse de lo que Rodríguez Fuentes había recibido de una fuente colateral producto del Seguro Social.

Evaluadas las posturas de las partes, el 18 de julio de 2024, el Tribunal de Primera Instancia emitió la *Resolución* que nos ocupa, mediante la cual declaró No Ha Lugar la *Moción de Sentencia*

*Sumaria*, promovida por la Autoridad.[5] En particular, el foro de origen desglosó las siguientes determinaciones de hechos:

1. El Sr. Rodríguez se desempeñaba como soldador de la AEP en la Región de Bayamón.

2. El 6 de febrero de 2019, el Negociado emitió un Laudo que establece que el despido del Sr. Rodríguez Fuentes, efectivo al 16 de diciembre de 2006, fue injustificado y ordenó a la AEP al pago de los salarios y demás haberes dejados de percibir por razón del mismo. Además, se ordenó el pago del interés legal vigente computado sobre el monto adeudado, desde el momento que se emitió el laudo y hasta que se satisfaga la deuda, y el pago de los honorarios de abogado.

3. La AEP no recurrió ante el Tribunal de Primera Instancia, Sala Superior de San Juan[,] mediante [un] Recurso de Revisión, por lo que el Laudo advino final y firme el 8 de marzo de 2019.

4. El 28 de diciembre de 2021, la Unión, en representación del Sr. Rodríguez Fuentes, radicó una *Demanda* en solicitud de orden para hacer cumplir el referido laudo.

5. La Administración del Seguro Social ("SSA", por sus siglas en inglés) determinó que, efectivo al 1 de mayo de 2011, el Sr. Rodríguez Fuentes estaba incapacitado para trabajar.

6. El 26 de octubre de 2022, la AEP emitió un primer pago por la cantidad de $111,264.27 correspondientes a salarios, pasos y aumentos salariales del Sr. Rodríguez Fuentes.

7. En la vista del 17 de febrero de 2023, en horas de la mañana, luego de un pago parcial efectuado unilateralmente por la AEP al querellante Rodríguez Fuentes y objetado por la UIE-AEP, las partes lograron unos acuerdos preliminares para el pago del Laudo, y el 28 de febrero de 2023 la AEP emitió otro pago a favor del unionado José A. Rodríguez Fuentes por las cantidades acordadas para cubrir las partidas de licencia regular ajustada; licencia por enfermedad e interés legal, con las correspondientes cantidades retenidas por concepto de contribución sobre ingresos, Seguro Social y por concepto de cuotas de unión, para un pago neto de $29,169.82, quedando pendiente el pago de los honorarios, pago éste *[sic]* que fue efectuado posteriormente el 20 de abril de 2023.

8. Con dichos desembolsos, la AEP pagó por los haberes dejados de devengar desde el 16 de diciembre de 2006, fecha del despido, hasta el 1 de

---

[5] Apéndice del recurso, págs. 1-13.

mayo de 2011, fecha de efectividad de la determinación de incapacidad emitida por el SSA.

9. El mismo día, 17 de febrero de 2023, nuestro Tribunal Supremo, publicó su Opinión del 13 de febrero de 2023, sobre el caso *Silva Soto v. Suiza Dairy [Corp.]*, 211 DPR 203 (2023).[6]

El foro primario expresó que no existía controversia de que el *Laudo* era final y firme al momento de resolverse *Soto v. Suiza Dairy Corp.*, supra, pero la Autoridad no había cumplido con el dictamen arbitral, pues faltaban por calcular y pagar cinco partidas adeudadas, así como los honorarios de abogado. Detalló que la norma jurídica que se estableció en *Silva Soto v. Suiza Dairy Corp.*, supra, no incidía sobre los hechos o méritos de la determinación arbitral, sino que meramente afectaba la forma en que se calculaba el pago de los salarios dejados de recibir. Aclaró que el referido *Laudo* no disponía de cuantías específicas, ni proponía un método preciso para fijar las cifras pertinentes, por lo que, el aplicar esta nueva norma a los procedimientos posteriores al dictamen arbitral, no alteraba el *Laudo* emitido por el árbitro ni sus determinaciones.

A su vez, el foro juzgador señaló que el reclamo para evaluar la aplicación de *Silva Soto v. Suiza Dairy Corp.*, supra, al caso de autos fue presentado por la Unión de manera oportuna, durante el transcurso de negociaciones transaccionales y antes de finiquitar los acuerdos preliminares alcanzados. Añadió que la Unión realizó las diligencias necesarias para poner a disposición de la representación legal de la Autoridad todos los documentos necesarios para resolver la controversia.

En cuanto a la razón de la incapacidad como fundamento para determinar si Rodríguez Fuentes se beneficiaría, el foro primario resolvió que la Autoridad no tenía la razón en tal planteamiento.

---

[6] Apéndice del recurso, págs. 6-7.

Indicó que, de una lectura de *Silva Soto v. Suiza Dairy Corp.*, supra, no se desprendía que tenía que existir una relación causal entre el despido y la razón de la incapacidad como requisito *sine qua non.* Aclaró que lo importante era que dicho beneficio existiera como una prestación de seguridad social proveniente de un tercero no relacionado con el patrono. Enfatizó que, la depresión como consecuencia del despido de Silva Soto fue un elemento adicional considerado por el Tribunal Supremo, mas no la causa por la cual se reconoció la doctrina de fuente colateral.

De igual forma, el foro sentenciador afirmó que la doctrina modificada en *Silva Soto v. Suiza Dairy Corp.*, supra, establece que no deben ser deducidos de la paga atrasada los beneficios por discapacidad recibidos del Seguro Social, por originarse de fondos del Estado derivados de contribuciones. Particularizó que la implementación de la nueva norma a la acción de epígrafe no frustraba la intención principal de la doctrina de la fuente colateral. En vista de lo anterior, determinó que la aplicación de *Silva Soto v. Suiza Dairy Corp.*, supra, a la presente controversia adelantaba la intención de la doctrina, así como el propósito, de asegurar remedios justos y equitativos, lo cual no alteraba en ninguna medida lo resuelto y el remedio concedido en el *Laudo.* En ese sentido, concluyó que, no habiéndose perfeccionado la transacción en este caso, era aplicable lo resuelto en *Silva Soto v. Suiza Dairy Corp.*, supra. Es decir, resolvió que no se debía tomar en consideración los beneficios que Rodríguez Fuentes recibió como beneficio del Seguro Social para calcular el pago de los salarios y demás haberes dejados de recibir como consecuencia del despido.

Inconforme con dicha determinación, el 19 de agosto de 2024, la parte peticionaria acudió ante nos mediante el recurso de epígrafe y realizó los siguientes señalamientos de error:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE <u>SILVA SOTO V. SUIZA DAIRY [CORP.]</u>, *SUPRA,* APLICA AL CASO DE AUTOS, RETROACTIVAMENTE.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE NO SE DEBEN TOMAR EN CONSIDERACIÓN LOS BENEFICIOS RECIBIDOS POR EL SSA AL MOMENTO DE CALCULAR EL PAGO DE SALARIOS Y DEMÁS HABERES DEJADOS DE RECIBIR COMO CONSECUENCIA DEL DESPIDO.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE NO TIENE QUE EXISTIR [UNA] RELACIÓN CAUSAL ENTRE EL DESPIDO Y LA RAZÓN DE LA INCAPACIDAD PARA QUE APLIQUE LA DOCTRINA DE <u>SILVA SOTO V. SUIZA DAIRY [CORP.]</u>, *SUPRA.*

En cumplimiento con nuestra *Resolución* del 28 de agosto de 2024, la parte recurrida compareció mediante *Alegato en Oposición* el 12 de septiembre del mismo año.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 2023 TSPR 145, 213 DPR ___ (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). La precitada Regla dispone lo siguiente:

El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o

aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B**

En nuestro ordenamiento jurídico, las relaciones obrero-patronales, la negociación colectiva y los procedimientos de arbitraje están vinculados al desarrollo económico, a la paz industrial y, por ende, a la consecución de los intereses públicos. *C.O.P.R. v. S.P.U.*, 181 DPR 299, 319 (2011). Específicamente, el arbitraje está considerado como un método alterno a la intervención judicial para la solución de conflictos. *Íd.*, pág. 362. Cónsono con lo anterior, en Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. Así, pues, se entiende que el arbitraje es el medio menos técnico, más flexible, menos oneroso y, por tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral. *Martínez Rodríguez v. A.E.E.*, 133 DPR 986 (1993).

Ahora bien, el arbitraje es un procedimiento de poderes delegados y mediante el convenio colectivo se le confiere la autoridad al árbitro para que evalúe y resuelva las controversias que allí se especifican. A. Acevedo Colom, *Legislación protectora del trabajo comentada*, 8va ed. Rev., Puerto Rico, Ed. Ramallo Printing Bros., 2005, pág. 393. Referente al proceso de arbitraje, el laudo representa la determinación que toma el árbitro respecto a la controversia laboral. *C.O.P.R. v. S.P.U.*, supra, pág. 368. Se ha establecido que el laudo de arbitraje no es ni un contrato ni una sentencia, pero disfruta de la naturaleza de ambos. *Íd.*, pág. 328.

Con relación a la revisión judicial de los procesos de arbitraje, nuestro más Alto Foro ha expresado que, aunque la intervención no

esté vedada, ante un convenio de arbitraje lo más prudente es la abstención judicial. *U.C.P.R. v. Triangle Engineering Corp.*, 136 DPR 133 (1994). Por ello, cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia. *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 DPR 318 (1988); *López v. Destilería Serrallés*, 90 DPR 245 (1964). Por tal razón, la revisión de los laudos de arbitraje se circunscribe al determinar: (1) la existencia de fraude; (2) conducta impropia; (3) falta del debido proceso de ley; (4) violación a la política pública; (5) falta de jurisdicción; o (6) que el laudo no resuelve todos los asuntos en controversia. *C.O.P.R. v. S.P.U.*, supra, pág. 319.

No obstante, si las partes pactan que el laudo arbitral sea conforme a derecho, los tribunales podrán corregir errores jurídicos en atención al derecho aplicable. Ello significa que el árbitro no puede ignorar o dejar pasar por desapercibidas las normas interpretativas, en el campo laboral, de derecho sustantivo emitidas por la Corte Suprema de los Estados Unidos y por el Tribunal Supremo de Puerto Rico. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 DPR 62, 68 (1987).

De igual modo, las decisiones de los tribunales de primera instancia, de las agencias administrativas y los laudos arbitrales se reputarán persuasivas. *J.R.T. v. Hato Rey Psychiatric Hosp.*, supra. En tal supuesto, la revisión judicial de los laudos de arbitraje es análoga a la revisión judicial de las decisiones administrativas. *Condado Plaza v. Asoc. Emp. Casinos P.R.*, 149 DPR 347 (1999); *Rivera v. Dir. Adm. Trib.*, 144 DPR 808, 821-822 (1998); *U.C.P.R. v. Triangle Engineering Corp.*, supra. Sin embargo, nuestro Tribunal Supremo ha aclarado que la intervención judicial no se justifica por una mera discrepancia de criterio con el árbitro, ya que se destruiría la esencia de los procesos de arbitraje. *UGT v. Hima San Pablo*

*Caguas,* 202 DPR 917, 929 (2019). Por lo tanto, es la norma que los foros judiciales apelativos tendrán la autoridad para revisar todas las cuestiones de derecho sustantivo resueltas por el árbitro para poder determinar si son correctas. *C.O.P.R. v. S.P.U.*, supra, pág. 370. Es decir, procede la anulación del laudo solo si no se ha resuelto la controversia conforme a derecho. *Íd.*

**C**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. Y otro v. ELA y otros*, 211 DPR 455 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.,* supra. Como se sabe, en aras de prevalecer en una

reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra,* la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.,* pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o

credibilidad. *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47, 213 DPR ___ (2024); *Acevedo y otros v. Depto. Hacienda y otros,* supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, 2024 TSPR 62, resuelto el 17 de junio de 2024; *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd*. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. V. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd*. No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. Y otro v. ELA y otros*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;

(3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Zorrilla Posada y otro,* supra; *Birriel Colón v. Econo y otro,* 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.,* supra; *González Meléndez v. Mun. San Juan et al.,* supra; *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.,* supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro,* supra; *Meléndez González et al. v. M. Cuebas,* supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.,* supra.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte peticionaria plantea en su primer señalamiento de error que el Tribunal de Primera Instancia erró al determinar que *Silva Soto v. Suiza Dairy Corp.,* supra, aplica retroactivamente al

caso de epígrafe. Como segundo señalamiento de error, sostiene que el foro primario incidió al determinar que no se deben tomar en consideración los beneficios recibidos por la Administración del Seguro Social al momento de calcular el pago de salarios y demás haberes dejados de recibir como consecuencia del despido injustificado. En su tercer y último señalamiento de error, arguye que el foro *a quo* erró al concluir que no tiene que existir relación causal entre el despido y la razón de la incapacidad para que aplique la doctrina de *Silva Soto v. Suiza Dairy Corp.*, supra.

Hemos evaluado el recurso de epígrafe conforme exige la normativa antes expuesta con particular atención a los criterios que le corresponde utilizar al Tribunal de Apelaciones al momento de revisar determinaciones del foro de instancia, según *Meléndez González et al. v. M. Cuebas,* supra. Luego de un examen sosegado del expediente ante nos, colegimos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Al entender sobre los planteamientos que la parte peticionaria propone ante este Foro, concluimos que la sala de origen no incurrió en error de derecho ni en abuso de discreción al declarar No Ha Lugar la solicitud de sentencia sumaria promovida por la parte peticionaria, ello a fin de que podamos soslayar la norma de abstención judicial que, en dictámenes como el de autos, regula el ejercicio de nuestras funciones.

Al evaluar *de novo* los documentos que nos ocupan, coincidimos con que, al adjudicar el asunto, el Tribunal de Primera Instancia actuó de conformidad con las normas que prevalecen en la materia que atendemos. Ello, nos hace concluir que nuestra intervención, en esta etapa de los procedimientos, no resulta oportuna. Siendo así, y en ausencia de prueba que nos permita resolver en contrario, denegamos expedir el auto de *certiorari* que

nos ocupa, al amparo de lo dispuesto en la Regla 40 de nuestro Reglamento, *supra*.

**IV**

Por los fundamentos que anteceden, denegamos la expedición del recurso de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones